Edgar J. **HARTSFIELD, Linda Hartsfield, Fae Davidson, Doyle Van Matre, Fae Davidson, as guardian ad litem of Steven Davidson, and Doyle Van Matre, as guardian ad litem of Pamela McCarroll, Appellants,**

v.

**CAROLINA CASUALTY INSURANCE CO., a corporation, Appellee.**

**No. 940.**

Supreme Court of Alaska.

March 10, 1969.

Theodore R. Dunn, of Burr, Boney & Pease, Anchorage, for appellants.

Robert C. Erwin, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellee.

Before NESBETT, C. J., DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

This case is here for the second time. On the first appeal we held that the mailing by appellee's agent of a notice of cancellation to the insured, Edgar Hartsfield, was the only prerequisite to an effective cancellation of an automobile liability insurance policy which appellee had issued to Hartsfield.[1] But we also held that Hartsfield's denial that he had ever received a notice of cancellation raised a genuine issue as to a material fact of whether notice of cancellation had been mailed, and therefore that the court below had erred in granting summary judgment for appellee.[2]

The case was remanded for trial. A jury found that notice of cancellation was mailed to Hartsfield. Accordingly, a judgment was entered declaring that the insurance policy Hartsfield had relied upon did not furnish him with insurance coverage with reference to certain claims arising out of an accident in which his automobile was involved. He then brought this appeal, alleging that the trial judge committed reversible error in admitting certain documents into evidence.

Hartsfield had secured an automobile liability insurance policy from appellee in order to obtain proof of financial responsibility satisfactory to the state, since he had had a prior accident.[3] The financial

1. Hartsfield v. Carolina Cas. Ins. Co., 411 P.2d 396, 397 (Alaska 1966).

2. *Id.* at 399–400.

3. The Motor Vehicle Safety Responsibility Act, AS 28.20, requires one involved in an automobile accident resulting in bodily injury or death of a person or damage to the property of any one person exceeding $200, to show proof of financial responsi-

bility as a prerequisite to the exercise of his privilege of operating a motor vehicle within the state. One method of proof is by way of a certificate of liability insurance (AS 28.20.410) certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility.

responsibility records of the state's Department of Public Safety as they pertained to appellant, were contained in Plaintiff's Exhibit 1 which Hartsfield claims was erroneously admitted into evidence. This exhibit included, among other things, a copy of a notice to Hartsfield, dated October 26, 1962, from the Department of Public Safety, stating that Hartsfield's insurance certificate would expire or be cancelled on November 5, 1962, that it would be necessary for Hartsfield to file a new certificate of insurance, and that in compliance with the provisions of the Motor Vehicle Safety Responsibility Act Hartsfield's motor vehicle operator's license would be suspended effective November 5, 1962, if requisite proof of financial responsibility were not filed by that date. The exhibit also contained a copy of a notice of license suspension, dated December 6, 1962 from the Department of Public Safety to Hartsfield, notifying him that his motor vehicle operator's license was suspended by reason of his failure to renew his certificate of insurance.

The other documents that Hartsfield claims were erroneously admitted into evidence were Plaintiff's Exhibits 7(e) and 8(e). Exhibit 7(e), of which 8(e) was a copy, was a notice to Hartsfield from Insurance, Inc., of Anchorage, Alaska, stating that Hartsfield's automobile liability insurance policy with appellee was cancelled effective ten days after service of the notice, which was mailed to Hartsfield on September 25, 1962. The insurance policy had been obtained for Hartsfield by Insurance, Inc., through appellee's general agent in Seattle, Kenneth I. Tobey, Inc. It was brought out at the trial through the testimony of the office manager of Insurance, Inc., that the latter had no authority to cancel the policy, and that the notice of cancellation was "merely a collection gimmick to get Mr. Hartsfield to know that his policy was going to have to be cancelled if he didn't pay because this cancellation notice was merely to remind him that he was behind in his premium payment."

The issue to be decided in the court below was whether appellee's general agent, Kenneth I. Tobey, Inc., had mailed a notice of cancellation of the insurance policy to Hartsfield on October 24, 1962. Hartsfield maintains that it has no bearing on that issue one way or the other whether or not the notices from the Department of Public Safety or from Insurance, Inc., were mailed to him, and therefore evidence of the sending of such notices was irrelevant. Appellee contends that those exhibits were relevant for impeachment purposes because the non-receipt of a number of notices casts doubt on the credibility of Hartsfield's denial of receipt of the notice from Tobey. Hartsfield counters with the argument that use of those exhibits to impeach him would be impeachment upon a collateral matter, which is not allowed.

For evidence to be admissible it must be relevant, and to be relevant it must tend to establish a material proposition.[4] Evidence of the mailing of the notices contained in Exhibits 1 and 7(e) may not tend in itself to establish the material proposition that the Tobey notice of cancellation was mailed to Hartsfield. But there is another material proposition involved, and that is Hartsfield's credibility —whether he was telling the truth when he denied receipt of the Tobey cancellation notice.

The evidence alone that the exhibits were mailed to Hartsfield was not what made them important. Importance attached from the fact that on cross-examination Hartsfield denied receipt of those three documents: As Hartsfield himself points out in his brief, "to deny receipt is to place in question the credibility of anyone not receiving three separate items of mail." That is the very point of this evidence. Hartsfield denied receiving the Tobey cancellation notice. He also denied receipt of the two notices from the Department of Public Safety and one from Insurance, Inc.

4. Mitchell v. Knight, 394 P.2d 892, 894 (Alaska 1964).

—all of them dealing with the subject of cancellation of his insurance policy. There was no evidence that any of these items of mail was incorrectly addressed. The jury might have believed from this that Hartsfield was not truthful when he denied receipt of the Tobey notice, because of common experience which would make it appear unlikely that four separate items of mail, all correctly addressed, would go astray. In this way the evidence as to the mailing and non-receipt of the three notices contained in Exhibits 1 and 7(e) could, to a useful extent, aid the jury in appraising Hartsfield's credibility. In turn this would aid the jury in determining whether the Tobey notice was mailed to Hartsfield as appellee contends it was, because if doubt were cast on the veracity of Hartsfield's denial of receipt of that notice, this would tend to prove that the notice was mailed to Hartsfield, as appellee contends.

This is not impeachment upon a collateral matter as Hartsfield claims. The rule which would prohibit that type of impeachment is aimed at avoiding confusion of issues and a waste of time which would result from permitting one to cross-examine a witness as to the truth of statements that would have little effect upon the decision of the case.[5] That is not the situation here. The evidence of the mailing and non-receipt of the three notices contained in the exhibits bears upon Hartsfield's story that he did not receive the Tobey notice with sufficient directness and force as to give such evidence appreciable value in determining whether Hartsfield's story was true, and therefore cannot be said to be addressed to a collateral issue.[6]

There was no error in admitting into evidence Plaintiff's Exhibits 1, 7(e) and 8(e), nor in permitting during the cross-examination of Hartsfield questions as to whether he had received the documents contained in those exhibits. The judgment is affirmed.

5. Gulf, C. & S. F. Ry. v. Matthews, 100 Tex. 63, 93 S.W. 1068, 1070 (1906); C. McCormick, Law of Evidence § 47, at 101 (1954).

6. *See* Stephens v. People, 19 N.Y. 549, 572 (1859); C. McCormick, Law of Evidence § 48, at 102–03 (1954).